The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Good morning. The first case on our docket is number 19 dash 11131. Mr. I'm not sure I'm gonna pronounce this correctly. And Phyllis. That was perfect, Your Honor. Yes, you're right. Thank you. May it please the court. I'm Dean Pam Phyllis, appearing on behalf of the we're appealing the denial of appellants motion intervene in the Rod State matter through no fault of their own. The appellants could lose their Texas Security Act claims to the statute of proposed if they're not permitted to intervene. The statute of proposed expired long before they had any reason to seek to intervene, and that's largely because of the slow pace with which the underlying litigation is proceeded from initiation and so the denial of class certification was a period of eight years, which means five years in three years before class certification was decided. The statute of proposed on the TSA claim expired. There was no reason for the appellants to seek to intervene during that period of time. In fact, it's discouraged to do so while a class or a class is pending. But now they need to intervene in order to get relation back under federal. So procedure 15 C to save their claims from the statute of proposed. As the court's aware, there are four elements for intervention under Rule 24. Only two of those are an issue here, timeliness and the adequacy of representation. And just briefly, I want to touch on both of those and unpack them. The intervention was timely because the appellants here moved to intervene within two weeks of receiving conflicting communications from OSIC, the official Stanford Investors Committee. On April 15, 2019, the chairman of OSIC, who was also the court appointed examiner and a lawyer, publicly posted that the individual investors had had a risk of losing their claim, losing their claims from being time barred and that they needed to consult with an attorney. Council. One problem, it seems to me, and you certainly have argued around it in your brief, which you confronted right now, it seems to me as counsel, whether it's you or somebody else as counsel for these potential interveners, whether OSIC or the receiver or anybody else was was fully or probably representing your client's interests was something for counsel for that client to figure out. And the fact that in April and May of 2019, some some worry, some indications came really doesn't alter the fact that it's up to counsel to be making decisions. And how does that fit into our counsel for those parties? How does that fit into our 24 Rule 24 analysis? Your representing from the beginning of the case from their involvement that they were asserting my client's claims and they were being told that they adequately represent my client's interests. In fact, even after OSIC's chairman sent out the communication saying they needed to seek counsel in order to pursue their claims, OSIC's outside counsel still denied that publicly posted that all of their claims were being protected. The simple fact remains that OSIC does not have standing to pursue the appellants or any individual investors TSA claims. Do they lose that standing in April of 2019? Or do they never have it? They never had it, Your Honor. I guess that's my point. I mean, how do we how does that help you? I mean, one of the things you say in your brief and correct me if it's not in your brief is that you are not in notice of this issue back in 2012 and 2013. Uh, I don't know if that's quite seems legitimate to me, but I'm not questioning your assertion. But because whether you're on notice or not of the issue, it does seem to me that lawyers are required to protect their clients interests and some other lawyers deciding that maybe they aren't able to represent your interest doesn't really change that dynamic. So, Your Honor, OSIC was publicly representing that it was asserting my client's claims during that first eight years that this case was pending as a putative class action. The claims were protected by the putative class action because there were individuals who were involved there who did have standing to assert those claims. Let's start in 2017. Then why don't you have to jump to the more in 2017? Well, because OSIC continued after the denial of class certification to make representations in public filings that it was asserting those claims and then continued to do so even after it was called into question. Our clients didn't have counsel in connection with the underlying lawsuit until O six chairman encouraged them to seek outside counsel to protect their client's claims. So we believe that the clock should run from the denial of class certification or from this conflicting OSIC communication. We believe it should run from the conflicting OSIC communication. However, to the extent that the court wants to look back to the denial of class certification as the appropriate triggering event. First, I would say, Your Honor, the court's president made clear that there are no bright line rules or test or what determines what's timely and what's not. However, at that time, at that time, Your Honor, the class cert was denied. The court entered a scheduling order and in that scheduling order provided the parties with two years to prepare the case for drop between the time class cert was denied and the time that my clients moved to intervene. The only discovery that had happened in that period of time was document discovery, and it was document discovery of the Stanford estate and of the defendants. And even though OSIC had all along been purporting to assert my client's TSA claims to this day, my clients have not received a single document subpoena nor deposition subpoena, and there's no indication that any additional discovery would be required. However, what's important about the fact that when class cert was denied, there was two years left to case for trial. Well, Your Honor, we moved to intervene in May of 2019. The case is currently set for trial in May of 2021. At the time we moved to intervene, there had been no fact depositions taken. The dispositive motion deadline was still off in the future, and there's still the same amount of time, regardless of which event the court were to look at in determining timeliness, which, as the court the court is aware, there are no right line rules for it. The court needs to consider the totality of the circumstances. This is certainly a case that involves unusual circumstances in the fact that it took eight years for the court below to decide class certification. And during that period of time, my client's claims were subject to being barred under the statute of proposed of this on your on your point that the committee is not representing your clients. In Zacharias, the court said that the committee standing in the shoes of the injured corporation SB eyes entitled to pursue the corporation's claim for the benefit, not of the wrongdoer, but of innocent investors. And then they said further, as directed by the court, a receiver may systematically use ancillary litigation against third party defendants to gather the entity S and B's assets. Once gathered, those assets are distributed through a court supervised administrative process. So are you drawing a distinction between representing your clients individually and representing all the investors? Your Honor, with respect to the Zacharias case, absolutely. The Zacharias case concerned an issue of the court's equitable jurisdiction to bar claims that were at issue. There didn't involve intervention. The receiver and OSIC there were not attempting to assert individuals claims and a critical distinction between the case. The plaintiff appellant had filed a separate lawsuit, which created policy issues that are addressed in Zacharias opinion. And that necessarily is that those those plaintiffs were trying to jump the queue because they could have gotten to judgment before OSIC got to judgment in a case against the same defendants. That's not what it seems to me that the reasons given by the Zacharias court for upholding the bar order is relevant to your case. The court reasoned, and I think this is part of the holding, that the receiver committee had standing and authority to assert the claims of all investors for the harm they suffered. They had the right to litigate the case. They agreed to a settlement with the bar order and the Zacharias court said the the committee and the receiver had authority to do that. So and also there was one individual claim that those investors brought. They claim that because the insurers had sent letters directly to them, the investors, they had an individual claim against the against the insurers and the court rejected that. They said that's just wordplay. Uh, the claim is against the Ponzi scheme. And, uh, so is there anything unique that you claim about this about your investors case other than the Texas Securities Act claim? Is there anything unique with your investors that wasn't present in the Zacharias investors? Yes, Your Honor. Again, just to to make sure the record's clear in Zacharias receiver and OSIC were not attempting to assert the individual investors claims, and that court went so far as to say that they didn't have standing to do so, which is standing to represent all the investors. In other words, they're bringing a derivative claim that the bank has based on the receivable. That the wrongdoers misconduct. So then the court expressly said that the receiver in the committee had the right to file ancillary suits to recover that money. The distinction, Your Honor, is between what is property of the Stanford estate and what is the property of my clients. And in that case, the receiver was pursuing property of the state, and the court found that they had jurisdiction to enter a bar order to stop the individual investors for pursuing their own claims didn't attempt to address the issue of adequacy of representation. And if if you take this logic to its extreme, I think what you end up with is a situation where district courts could interpret the court's decision as mean when there's a receiver that mean that has the power to issue a bar order. Nobody can intervene ever because there's something unique about your case. But to me, that's the only issue in the case is whether there's something unique about your case that is not common to all the investors. The and I think a critical distinction, as I pointed out earlier between us and Zacharias is our clients sought to intervene in the same action that OSIC was pursuing. We weren't trying to jump the queue. We were trying to get our claims on board and to save them from being barred by the statute of proposed. The other unique circumstance here, of course, is the length of time that this case with pending as a putative class action. Those facts didn't exist in Zacharias. They do exist here, and that is the main reason why we need to intervene in this action in order to save. Why is this not a punitive claim? Why is why is the claim of the bank? Uh, the bank has a claim against the wrongdoers, according to Zacharias, to recover that money as a receivable for the benefit of the investors. And that's what Zacharias says. But But, Your Honor, it's not being pursued as a class action, and there's no indication from Zacharias that adequacy of representation for purposes of intervention was considered. In fact, under Rule 24 in the case law interpreting it, the burden is is minimal to prove inadequate representation, and we don't have to prove that they don't adequately represented represent us. We have to prove that they may not adequately represent. What's your argument that they may not? They may not actually represent us because they don't have standing to pursue the TSA claims. Your Honor, let me ask you this. What? How would you be prejudiced by failure to pursue the TSA claim? What could you recover there that you can't recover under the causative action? The committee asserted. Sure, Your Honor, the TSA claim firstly has a different standard than would apply to, for example, this is an eight or in a better claim under the TSA. Then compare that to a conspiracy point for a conspiracy claim. We would have to prove a meeting of the minds, which is notoriously difficult to prove for a TSA claim. We merely have to show that the defendants acted with reckless disregard. There's also a possibility of recovering attorney's fees under the TSA, which doesn't exist for just an ordinary court claim. That is, I mean, do you have any authority for the proposition that one of court who's administering receivership action who orders that the committee and the receiver step in the shoes of the investor and all the investors and sue the wrongdoer cannot sue under the TSA? Yes, Your Honor, the TSA itself and the case law interpreting it says that in order to pursue a claim under the TSA, you have to purchase the security issues of the purchase. Or can you not assign that claim to somebody else? It could be assigned, but my clients who own the claims didn't assign the claim, and the court can't create Article three standing by the well, they held it back or I said they had standing. Yeah. Uh, I don't know if you got any authority that that someone that an entity who has a court order to pursue the claims on behalf of the investors who bought the security cannot sue under the TSA. Your Honor, I'm sorry. I'm out of time. I'm happy to respond. If the court will indulge me. Please, please answer the question. Thank you. Thank you. Um, Your Honor, we believe that Zacharias explicitly held, citing to Janvey versus the Democratic Party, I believe was the case that the receiver and OSIC do not have standing to pursue my client's individual claims. And because of that, they cannot adequately represent them in this action. The bank defendants have already said both below and here that they intend to seek to bar those claims based on OSIC's lack of standing. The fact that OSIC has not has opposed our intervention despite that shows they don't share the same ultimate objective is us, and there's an adversity of interest. The Zacharias decision. Also, I will note your honor is on appeal to the U. S. Supreme Court in the U. S. Supreme Court has asked for a response from the Apple East. Charlie, would you add the time that we ran over to the other side? It's done. Mr Miller. Good morning, Your Honors. My name is Kerry Miller, and I'm here to argue on behalf of OSIC. The way that the Apple East are organizing themselves this morning is I will spend the 1st 10 or now almost 11 minutes on the issue of adequacy of representation and also prejudice toe OSIC. If the intervention were allowed to go forward and co council representing the banks, Miss Reed, Mr Cowie will discuss the issues of timeliness and perhaps jurisdiction five minutes apiece in the second half of our argument. I think there are some some basic statistics that that are really relevant to both of the issues that I'm going to discuss today. Adequacy and representation and in prejudice toe OSIC. If the intervention were allowed to go forward and they've discussed by Zacharias have been discussed by this court Lloyd's, and that is that the number of investors that are represented by OSIC in this case are 18,000 plus. Um, this case has been going on for 11 years. The number of interveners that are part of the Mendez group are 147 600 less than the number of objectives that were at issue in Zacharias are 0.8% of the total number of investors who were involved in this action as a receivership court and a receiver administered case on behalf of the entities. And I think that those are very important because when you get into some of the questions I think Judge Davis has is what's unique about the Mendez interveners. The question is nothing. Nothing is unique about the Mendez interveners. Mr Miller, let me ask you about one of the emails or one of the declarations that that, uh, uh, interveners are saying triggered this effort to intervene. Uh, the examiner said in a posted email or whatever a claim that the banks helped Stanford commit fraud against the CD investors is really the claim of an individual investor. It seems like most of the briefs say that the receiver OSIC can represent more or less class claims, even though this is not a class action. But individual claims, separate claims of of, uh, would be claim. It's like the intervener interveners cannot be represented. Is that are you saying if I ever understood what that states in the email I'm talking about, is that what you would represent to be the position your client has had all along that these individual claims of creditors is what the problem is, and we have never represented them. No, that is not what OSIC claims. So OSIC has two capacities. In this case, it has. It functions in its capacity as an assignee of the receiver, and it also functions in its capacity as the investors committee prosecuting the investors. And to answer your question and to respond to some of the comments that opposing counsel made, the only rulings that are in place directly on the issue of OSIC separate capacity to assert claims on behalf of its constituents, the individual investors were made by Judge God be back in 2012 when he specifically said that OSIC had the ability to assert fraudulent transfer claims on the part of individual investors. And again, in 2015, when he reiterated that position. So it is OSIC's position that with respect to the claims that it is prosecuting, um, in this case, that both as the assignee of the receiver and on behalf of the investors that it can obtain a complete and full recovery against these five banks. And if that recovery is obtained, then the issues that are being asserted by the gets into the trial management decisions by Judge God be, you know, he's This is a complex case. It's been going on a long time, and he's organized it in such a way, I think, to maximize the equity in the power of the receivership and in denying the intervention by the Mendez interveners. Essentially, what he found was based upon the rule 24 standards and the discretion that he's afforded is both the receiver court in the MDL judges is a matter of case management of progressing this litigation on behalf of the 18,000 investors. Let me ask a more specific question. We talked about the Texas Securities Act with your friend on my screen above you on the display, but wherever he is on yours, um, can you bring those claims that, uh, these various banks were aware of what Stanford was up to and assisted him knowingly in doing so, whether it's a meeting of the minds or whether it's in some other in some other way of those claims you're representing OSIC is and or at least can and and is bringing. OSIC is bringing those claims and those exposition is it can assert those claims and can assert them at trial and can prove them up at trial. There is a boy is Zacharias that Judge Davis is talking about my understanding. The current status of that is actually in conference. Uh, that response has been filed, whether it's this week or next week. Uh, they're fixing to be looking at it. That's a Mississippi word. If you're not familiar with it, they're about to look at it. Um, Zacharias search granted. It's overturned. Where are we? Well, I think we'd have to see what the issue is there, because clearly we believe Zacharias is what I'm saying to your position. I think it's helpful, and I think it's relevant, and I think it's helpful, and it's relevant for many of the passages that Judge Davis cited from Judge Higginbotham's writing and Zacharias, which is okay. That dealt with objections to the scope of a bar, and on its surface, you may not think that that has a tremendous amount of relevancy to an appeal to Rule 24 intervention. But I think it does because it recognizes the fundamental concepts of the power and the equity of the receivership court. And what it does is it talks about objectors trying to interrupt the equitable, inconsistent approach and distribution of aggregate recoveries. And so as long as those principles are not overturned, um, by the U. S. Supreme Court, I think Zacharias is still supportive of our position. I mean, you know, to the extent it gets into the scope of a bar order. I know Lloyd's this court reverse Judge God be because that bar order may be applied to claims that were outside of the receivership. Those were claims involving former Stanford employees who, I think, claimed additional short status under the policies of the bar order applied to those in this court sort of trim that back. But on the specific question of Zacharias, I think I think Judge Higginbotham hit the nail on the head as it relates to this case, um, on the analogy between objection and intervention. And that is OSIC. And the 0.8% of the Mendez intervenors share a common purpose under Rule 24 is to maximize the recovery against the banks because with Judge God be his health and with this court reaffirmed in Zacharias, which I don't don't think is gonna be disturbed by the Fifth Circuit is the power of the equitable distribution in receivership and how long that's been a fundamental pillar of our system going back to chancery court in England, according to Judge Higginbotham. And so that's with this effect of this litigation taken bit by bit at a time by Judge God be is seeking to accomplish. And this is the largest potentially recovery on behalf of the individual investors coming up with these banks. I mean, opposing counsel talked about the length of time and the duration, but there were other focuses of that litigation, and there were other recoveries against insurers, against brokers, against law firms, against a whole slew of other defendants in which the receivership made recoveries. Now we're just to this next phase. I mean, this is a way that Judge God be phase it out, and we're here because of his trial management decisions. Whether you like him or not, we're here because we're here right now. And when you look back to, you know, the lifting of the state when he denied class certification in the beginning of discovery, I mean, why weren't the Mendez interveners? If this TSA claim was so special and so important, why weren't they asserting the claim back in 2017 or 2018? I mean, where we stand, and this gets into the prejudice point is we are literally after 11 years for 18,000 investors on the verge of something here. We've met these deadlines. We've met the deadlines through COVID. We've met the fact discovery deadline. We've met the expert report discovery deadline. Expert depositions are due to be completed by November 14th. We're going to depose 22 experts between now and then. The dispositive motion deadline is December the 14th. The banks are gonna file the dispositive motions. We have until January 20th or so to oppose those emotion. A remand has already been filed to send the case back to the southern district of Texas. So the architecture is set up to get these victims, these investors, all 18,000 of them to be in the position that they've long sought to be and to allow an intervention by 0.8% of this class who are going to get the same. I mean, what I didn't hear opposing counsel say is is if we make a, if OSIC makes a recovery against the banks and there is a distribution that his clients are not going to accept their distribution because they want to prosecute their intervener claim so much. He didn't say that because we know that's not going to happen. It hasn't happened in the past with objectors, and it's not going to happen in this case. Our interests are aligned. There is absolutely no proof, no evidence, no argument that we're in collusion or there's adversity, which is what the standard is under adequacy of representation in the Fifth Circuit. There is none. And the issue when you really get down to it on standing standing is not before this court. Judge Godby has held so far that OSIC has stand period in two rulings. They haven't been appealed. They haven't been overturned. So that's where we are separate. And apart from this, what we know from Zachariah's what we know from Lloyd's is that the receiver whose claims are also being in my last 35 seconds, I just like to touch upon a jurisdictional issue that we may hear from Societe Generale later on in this argument. I think their personal jurisdiction insertion is entirely inappropriate. OSIC filed a motion to strike that that issue is not subject to the notice of appeal. It is not subject to Judge Godby's Rule 24 motion. It has never been certified. There's never been a cross notice of appeal. So to the extent that in 10 minutes or so we're engaged in appellate free for all, we would ask that the court reject that, deny it and not allow Societe Generale to argue jurisdiction because OSIC is impacted by that. It doesn't just move out the intervention. It has a direct impact on our 18,000 investors who were representing. Thank you, Mr Miller. We have your argument. Mr Cowley. Yes, thank you. May it please the court. Uh, we've I represent HSBC Bank PLC, one of the defendants in the case. I filed a letter last week that addressed our position on the standing inadequacy of representation requirements. Unless the panel has questions about me on that, I would like to really address the timeliness issue, which I believe is the easiest and simplest way to dispose of this appeal. Uh, timeliness is an element that is really important reviewed because the district court made findings on it for abuse of discretion. So it is an abuse of discretion standard. Deciding whether the district court abused its discretion on the timeliness rule, it's important to look at the appellant's arguments that they actually made in their moving papers to the district court, which are significantly different than the arguments they've made to this panel in its briefs and today at argument. First, in the moving papers, the appellants argued that the item on the clock for timeliness and that caused their interest not to be adequately represented was the court's denial of class certification. That occurred 18 months before they sought to intervene in this case. The appellants made no argument whatsoever in their moving papers that these April 2019 letters from lawyers constituted a triggering event, constituted unusual circumstances or had any effect on timeliness whatsoever. Their only timeliness arguments were about the court's denial of class certification. Let me ask you this, Mr Carrier. We have those two different dates, and your briefing covers it pretty well. I'm gonna talk about prejudice. I know you are dividing up this argument. Is that your role in this? That's not well, I'm I'm prepared to address any questions. I didn't want to stop Mr Miller on this because I thought he was indicating this was yours. According to our case law, the S. P. Case and various others. When we're talking about, uh, mandatory, uh, intervention, what we look at is what arises as of the time that intervention should have happened and not going back to the beginning of the case and all that's happened before that you accept that and you can move on to answering. Uh, it does seem to me that, uh, intervening is at least have some argument that I'm not fully understanding the facts of this, that where discovery is now and where was actually when they first thought intervention a year ago. Uh, there were adjustments that could have been made at that time, just starting even for starting 2017 as the period in which they should have first intervened. There were adjustments that would not have been that prejudicial. Help me with either my premises for that or why there actually is prejudice. Well, there's, I guess, two forms of prejudice I'd like to address. The first is the prejudice Osa or the appellants are arguing in their papers is that their claim is going to be time barred by a five year statute of pose. In my view is they can't. The statute of repose his run. They can't revive it by intervening in the case. But if they can, then that would work tremendous prejudice to the defendants because we have a right to be protected by a statute of repose. The Supreme Court addressed that issue in the Calpers be ants case, which is cited in the appellants brief that statutes of repose create substantive rights that can't be trumped and circumvented by allowing intervention. But with respect to the second form of prejudice, which is really arising from the delay, it would cause that we're at a point where for my client are our witnesses are retiring. They're getting old. The victims are dying. They're retiring. If if we're faced with a situation where there were approximately 1500 individual investors attempting to intervene in this case, let me ask you this, Mr Cowie, the limit time you have left. Isn't it correct, though, to the extent those things would have been occurring anywhere? All we're really talking about is what's different about their intervening or trying to in May of 2019 versus intervening in 2017. Your witnesses aren't that much older in that 18 months. Um, isn't that the right time period to be looking at? And isn't the issues like that? The relevancy of them applies to when they sought to intervene, which was a year ago. But if they had attempted intervene right when class certification was denied, they would still have the problem with the statute of repose. So we would be prejudiced if they could intervene and revive a statute of repose. But with respect to the discovery, we could have at least started the motion to dismiss briefing, and we could have at least served document requests because the court has ruled in denying class certification that individualized issues predominate over common issues with respect to investor claims. So we certainly could have gotten out written discovery to the 1500 investors that we're attempting to intervene in the hedge funds and started that process 18 months earlier than than we could have otherwise. So, yes, it did. Even that created a delay. Thank you. Cancel his rage. Thank you, Your Honor. Noel Reed for Society General Private Banking Suisse. We did separately brief an issue that goes on. Let me be clear to timeliness and the court's analysis of timeliness. OSIC is very concerned that this court might address the question of jurisdiction substantively. But to be clear, we've raised it as an issue that goes to what would be required for the court to address the jurisdiction with respect to 147 or at the time the trial court decided this motion 965 proposed interveners. What happened to the rest of those? The difference between 900 and 1 40. Well, very interestingly, Your Honor, the other group of interveners was represented by Fishman. Hey, good. We're here in front of the court today representing OSIC, and they refiled their case. They found a new case in Houston, which is now in the southern district of Texas, and they have agreed to stay their case on behalf of that group of interveners, which pending what happens here. Perhaps I suppose that the court's reversal of the order if the court were to reverse it, I don't know what they would argue is the impact on the other group of interveners. But the order clearly was as to both sets of interveners and to get back to the 2019 order on intervention. It was it was Fishman. Hey, good on behalf of the other proposed interveners who argued we won't need to litigate jurisdiction, personal jurisdiction because the court already decided it in 2014. That is in there in the record at 14314. So they interjected the 2014 order as a basis that the court would not have to revisit personal jurisdiction. Our argument on appeal is that that is wrong and appropriate for this court to address in the context of the intervention for two reasons. One, because if the court looks at that 2014 order, which is at the record 2844, the court below gave seven contacts that it claimed were the minimum context that were sufficient in the years since that order. This court and in fact, I believe Judge South with you or you may have joined the Monkton opinion. This court has addressed a number of cases that have made clear that without an analysis of who initiated those contacts, they are insufficient under prevailing Fifth Circuit case law to find specific jurisdiction. Even if, though this court didn't address the propriety of the 2014 order in the context of what would be required to litigate the interventions, the jurisdiction over the claims of these 147 or 965 interveners, the court still would look at what's different about these interveners. Even if you thought you couldn't look at that 2014 order, you would still say these claims are different. These claims are number one brought majority by a majority of plaintiffs who do not live in Texas. And part of Judge Godfrey's original order was that there were investors harmed in Texas, but more than two thirds of the proposed interveners are not Texas residents, not alleged to be. They are alleged, they alleged that they purchased CDs from an Antiguan bank, Sybil, and they don't and can't allege that they purchased those CDs from Society General Private Banking Suisse, which did not sell or even take in the funds from CD investors. And so it's, it's both a different analysis, and the 2014 order is wrong on its face in light of prevailing case law. And that's the argument that we're making. We're not going to issue an order directly as to the 2014 order, but it is clearly implicated and again, was raised as a reason that litigating the jurisdictional issue as to 147 or 965 interveners would not delay this case, which it unquestionably would. Whether or not at the time in 2019, discovery on the issue of what the banks did was sufficiently advanced that it would make sense for us to make an inquiry about each of these proposed interveners and the circumstances of their purchases. And we would unquestionably be entitled to take that discovery. And the banks too have been in this court for 11 years. And as, as was raised in the motion to strike, frankly, we've asked Judge Godby to allow us to bring the jurisdictional issue directly to this court. OSIC has opposed it. And they are concerned that there will be an incidental impact of an order that addresses the timeliness impact of addressing jurisdiction. They are, they are afraid that this court in addressing that may say something that harms them substantively, but that's not a reason to avoid addressing the issue. And with that, your honor, we'll rest on our brief. Thank you. Council. Mr. Pan Phyllis. Thank you, Your Honor. Uh, just to briefly address Miss Reed's argument, it's appellant's position that her jurisdictional issues have no this appeal. Um, there wasn't. It's really putting the cart before the horse as it relates to my clients. My clients were not allowed to intervene. Therefore, their time for filing a rule 12 motion to raise these issues never occurred. Therefore, it was not before the district court and couldn't have been a basis for the court's decision below. We just think it's, uh, they lost the opportunity to appeal that they asked for permission. They weren't given it, and now they're just trying to include it here, which we don't think is appropriate. Um, Your Honor, I think it's important that the court understand just how limited the investors recovery in the Stanford estate has been to this point. They've recovered approximately five cents on the dollar. Compare that to Bernie Madoff's investors who recovered upwards of 80 cents on the dollar, and they've been waiting for over 11 years. The idea that OSIT could somehow use my clients claims TSA claims in particular to increase the amount of a settlement or increase the amount of judgment presupposes that they have standing to assert those claims, which they do not. And in fact, Mr Mr Miller's firm Fishman Haygood, as was pointed out a moment ago on the same day that my clients moved to intervene in May of 2019. They have of 900 individual Stanford investors asserting the very same claims that my clients asserted they were. Theirs was also denied, and they chose to file a separate action, which we don't think is the way to preserve the claims. However, they now twice have filed claims that indicate that OSIT, the party they're representing here, does not adequately represent the interest of individuals, individual investors. If it's true for their clients, it's also true for the appellants. Let me ask you this. If if you're allowed to intervene on behalf of your investors, then wouldn't be be reasonable to expect all the other investors to come in and try to intervene? Well, I suppose if the court were to reverse the decision below that Fishman Haygood's clients would also be allowed to intervene as a result of that. I don't I wouldn't foresee at this point if some new investor tried to intervene, given how much the litigation has progressed in the last year and a half that the court would allow them to intervene at this late date. But the point in time at which timeliness to be determined is the point at which the intervention was sought, which was in May of 2019, which is why the current status of the case is of no moment. Now, that being the case, just as we represented to the court below, we've always said that we would take a back seat. We simply wanted to have our claims on board, especially in the event that they choose to negotiate a settlement with the Apple bank defendants, because it's clear the bank defendants aren't going to assign any value to my client's claims unless they are properly in the case. They're not going to see them as a threat whatsoever. And therefore, the OSIC is not going to be able to monetize them on behalf of all of the TSA claim. Have they not? They have, Your Honor. Our position remains they don't have standing to assert it. And going back to Zacharias, I'd like to draw the court's attention specifically to footnote 61 in that opinion, where the court, the Fifth Circuit cited to the Janvey versus Democratic Senatorial Campaign Commission, and specifically included a parenthetical that says a federal equity receiver has standing to assert only the claims of the entities and receivership and not the claims of the entities, investor creditors. And yet that's precisely what OSIC is purporting to do here and which we contend is not appropriate. No, but the court also said that this was a derivative claim that they can assert on behalf of the investors as the recovery of receivable. Your Honor, I believe what the court was referring to there was claims for the end to be distributed to the investor. But these claims that my clients are bringing are their claims, their individual claims that belong to them, not to the receivership of the state. You're talking about the TSA claim? Yes, Your Honor. We're not suggesting that they can't attempt to assert the claim, which they clearly have, and the court allowed them to do. We're just simply saying that they don't have standing to bring that claim. And ultimately, they're not going to be able to monetize. Sorry, out of time. Thank you, counsel. We have your argument. We appreciate it. Thank you, Your Honor. Thank you.